## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KARLA BRINTLEY**,**

     Plaintiff,

v.

AEROQUIP CREDIT UNION,
a credit union,

     Defendant.

_____/

Case No: 2:17-cv-13912

Hon. Arthur J. Tarnow

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KARLA BRINTLEY, individually, by and through the undersigned counsel, Jennifer B. Salvatore and Scott J. Ferrell, Co-Counsel for Plaintiff, hereby files this First Amended Complaint against Defendant AEROQUIP CREDIT UNION for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq*. ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1301 *et seq*., alleging as follows:

## INTRODUCTION

1.    As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of

the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2]  Thus, depriving blind persons of equal access to commercial

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018).  Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018).  The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS)

websites on the Internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the ADA almost three decades ago.  " 'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' ' "  *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))).  "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'"  *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*).   "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social

---

data.  The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332).   To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.*  "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'".  *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

## <u>JURISDICTION AND VENUE</u>

3.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claim under the Michigan Persons

with Disabilities Civil Rights Act, M.C.L. § 37.1301 *et seq.*

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant resides in this District, Defendant's principal place of business is in this District, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, and Defendant is subject to personal jurisdiction in this District.

## PARTIES

5.     Plaintiff KARLA BRINTLEY ("Plaintiff") is an adult resident of Michigan.   Plaintiff is *sui juris,* is permanently blind and uses a screen reader in order to access the internet and read website content, and thus qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.  Despite several attempts to use and navigate Defendant's website, www.aeroquipcu.com, Plaintiff has been denied the full use and enjoyment of the facilities and services of aeroquipcu.com as a result of accessibility barriers on aeroquipcu.com.  The access barriers on aeroquipcu.com have caused a denial of Plaintiff's full and equal access multiple times.   Similarly, the access barriers on aeroquipcu.com have deterred Plaintiff from visiting Defendant's credit union locations.

6.     While Plaintiff genuinely wants to avail herself of Defendant's

banking services, Plaintiff has dual motivations:  she is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]."  *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).  Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiff has filed multiple lawsuits against various operators of commercial websites under Title III of the ADA as part of her advocacy work on behalf of the civil rights of visually-impaired persons.  Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial website and others are fully and equally enjoyable to and usable by visually-impaired persons including herself.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendant AEROQUIP CREDIT UNION ("Aeroquip CU") is a credit union with its principal place of business located in Jackson, Michigan, in this District.  Plaintiff is informed and believes, and thereon alleges, that Aeroquip CU owns and operates credit union locations in Michigan.  The

credit union locations constitute places of public accommodation. Aeroquip CU's locations provide to the public important goods and/or services.   Aeroquip CU also provides to the public the aeroquipcu.com website.   Aeroquipcu.com provides access to Aeroquip CU's array of services, including a locator for the Aeroquip CU facilities, financial calculators, information that enables a person without an account to learn what services Aeroquip CU has to offer potential customers including descriptions of its amenities and services that enable a user to obtain general information about particular topics and specific information about what Aeroquip CU offers, and many other benefits related to these facilities and services.   The Aeroquip CU facilities are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Aeroquipcu.com is a service, privilege, advantage, and accommodation of the Aeroquip CU facilities.     Aeroquipcu.com is a service, privilege, advantage, and accommodation that is heavily integrated with these locations.

8.    At all times relevant to the First Amended Complaint, Aeroquip CU was acting through its agents, servants and/or employees.

## FACTUAL BACKGROUND

## Applicability of the ADA to Commercial Websites

9.    The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

10.    Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen.  Screen access software provides the only method by which a blind person may independently access the internet.   Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services contained thereon.

11.    The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").   WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people.   These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.    These guidelines recommend several basic

8

**components** for making websites accessible including, but not limited to: adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

12.   Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites.   *See, e.g.*, *Carroll v. Fedfinancial Fed. Credit Union*, -- F. Supp. 3d --, Civil No. 2018 WL 3212023, at \*4-\*7 (E.D. Va. June 25, 2018); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 874-83 (N.D. Ohio Feb. 13, 2018); *Gathers v. 1-800-Flowers.com, Inc.*, Civil Action No. 17-cv-10273-IT, 2018 WL 839381, at \*2-\*5 (D. Mass. Feb. 12, 2018); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, Case No. 2:16-cv-08211-ODW(SS), 2018 WL 566781, at \*3-\*8 (C.D. Cal. Jan. 24, 2018); *Frazier v. E.L.I. Trading, Inc. d/b/a Mica Bella Cosmetics*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00024-AJS (member case) [Dkt. 191] (W.D. Pa. Jan. 11, 2018); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at \*3-\*15 (S.D.N.Y. Dec. 20, 2017);

*Rios v. New York & Co., Inc.*, Case No. 2:17-cv-04676-ODW (AGRx), 2017 WL 5564530, at *2-*7 (C.D. Cal. Nov. 16, 2017); *Access Now, Inc. v. Blue Apron, LLC*, Civil No. 17-cv-116-JL, 2017 WL 5186354, at *2-*11 (D.N.H. Nov. 8, 2017); *Gorecki v. Dave & Buster's Inc.*, Case No. CV 17-1138 PSG (AGRx), 2017 WL 6371367, at *2-*6 (C.D. Cal. Oct. 10, 2017); *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3-*6 (C.D. Cal. Oct. 3, 2017); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387-405 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki v. Hobby Stores, Inc.*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *2-*3 (S.D.N.Y. July 21, 2017); *Frazier v. Cogo's, Co.*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00091-AJS (member case) [Dkt. 171] (W.D. Pa. June 27, 2018) (consent decree); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736, at *3-*7 (C.D. Cal. June 15, 2017) (Walter, J.); *id.* at *7 ("[T]his is a relatively straightforward claim that [defendant] failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved

effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1343-51 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial), *appeal docketed*, No. 17-13467 (11th Cir. Aug. 1, 2017); *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [Dkt. 9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (lead case), 2:17-cv-00269-AJS (member case) [Dkt. 99] (W.D. Pa. Apr. 11, 2017) (consent decree); *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317-21 (S.D. Fla. 2017); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v.*

11

*Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp. 3d 565, 576 (D. Vt. 2015); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx), [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014) (Carney, J.); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-02 (D. Mass. 2012); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) ("The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the

premises of a public accommodation would contradict the plain language of the statute.").

## The Inaccessibility of Aeroquip CU's Website to the Visually-Impaired

13.    Aeroquip CU offers the commercial website, aeroquipcu.com, which provides, among other things, information concerning the Aeroquip CU locations it operates, information and descriptions of its amenities and services, privileges, advantages, and accommodations, and allows users to find the locations for them to visit.

14.    Based on information and belief, it is Aeroquip CU's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to aeroquipcu.com.  Due to Aeroquip CU's failure and refusal to remove access barriers on aeroquipcu.com, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to the Aeroquip CU locations and to the other services, advantages, privileges, and accommodations offered to the public through aeroquipcu.com.

15.    Aeroquip CU denies blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and

information made available through aeroquipcu.com by preventing them from freely navigating aeroquipcu.com. Aeroquipcu.com contains access barriers that prevented free and full use by blind persons using screen reading software.

16.    Aeroquipcu.com's barriers are pervasive and include, but are not limited to, the following: (1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead a text box will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Aeroquip CU customers are unable to determine what is on the website, browse the site, look for the Aeroquip CU locations, check out Defendant's amenities, and/or determine which location to visit; (2) Redundant Links where adjacent links go to the same URL address which results in additional navigation

14

and repetition for keyboard and screen reader users; and (3) Empty or missing form labels which presented a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls.

17.    Due to the inaccessibility of aeroquipcu.com, blind and otherwise visually impaired customers who use screen readers are hindered from effectively browsing for Aeroquip CU's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users.  If aeroquipcu.com were accessible, Plaintiff would independently and privately investigate Aeroquip CU's services, privileges, advantages, and accommodations and amenities, and find the locations to visit via Aeroquip CU's website as sighted individuals can and do.

18.    Despite several attempts to use aeroquipcu.com in recent months, the numerous access barriers contained on Aeroquip CU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing Aeroquip CU's website.  Similarly, based on the numerous access barriers contained on aeroquipcu.com, Plaintiff has been deterred from visiting Aeroquip CU's physical locations that Plaintiff

15

may have located by using aeroquipcu.com.  Plaintiff continues to attempt to utilize Aeroquip CU's website and plans to continue to attempt to utilize such website in the near future.  Plaintiff's dignitary interest as a disabled person has been harmed by Defendant's actions.

### COUNT I

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

19.     Plaintiff repeats and realleges the allegations set forth above.

20.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq*., provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

21.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges,

advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

22.    Aeroquip CU's locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. Aeroquip CU generates millions of

dollars in revenue from the sale of its amenities and services, privileges, advantages, and accommodations in Michigan through its locations and related services, privileges, advantages, and accommodations and aeroquipcu.com. Aeroquipcu.com is a service, privilege, advantage, and accommodation provided by Aeroquip CU that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Aeroquip CU made available to the non-disabled public. Aeroquip CU is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Aeroquip CU denies visually-impaired customers the services, privileges, advantages, and accommodations provided by aeroquipcu.com. These violations are ongoing.

23. Aeroquip CU's actions constitute unlawful discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. in that: Aeroquip CU has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

24. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures,

and rights set forth and incorporated therein, Plaintiff requests preliminary and permanent injunctive relief whereby aeroquipcu.com is modified and revised so as to be accessible to the visually-impaired, further equitable relief, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

## COUNT II

## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. § 37.1301, *et seq.*

25.     Plaintiff repeats and realleges the allegations set forth above.

26.     Aeroquip CU operates a "place of public accommodation" pursuant to M.C.L. § 37.1301(a).

27.     Aeroquip CU has committed, and continues to commit, an unlawful act pursuant to M.C.L. § 37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges by constructing a website that is inaccessible to Plaintiff; maintaining the website in this inaccessible form; and failing to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

28.     Pursuant to M.C.L. § 37.1606, Plaintiff is entitled to

compensatory and punitive damages, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to modify and revise aeroquipcu.com so as to be accessible to the visually-impaired.

WHEREFORE, Plaintiff prays for judgment against Defendant AEROQUIP CREDIT UNION as follows:

For **COUNT I,** an injunction requiring Aeroquip CU to make all readily achievable alterations and modifications to its website, aeroquipcu.com, to allow full and equal enjoyment of the goods, services, facilities, privileges and advantages offered by the website to persons who are visually-impaired, and the reasonable attorneys' fees and costs of maintaining this action; and

For **COUNT II,** compensatory and exemplary damages, attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Aeroquip CU to make all readily achievable alterations and modifications to its website, aeroquipcu.com, to allow full and equal enjoyment of the goods, services, facilities, privileges and advantages offered by the website to

20

persons who are visually-impaired.

Respectfully submitted,


/s/ Jennifer B. Salvatore
Jennifer B. Salvatore, Esq.
Salvatore Prescott & Porter, PLLC
105 East Main Street
Northville, Michigan 48167
Phone: (248) 679-8711
Fax: (248) 773-7280
salvatore@spplawyers.com

/s/ Scott J. Ferrell
Scott J. Ferrell, Esq.
Pacific Trial Attorneys, P.C.
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com

Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.


Respectfully submitted,


/s/ Jennifer B. Salvatore
Jennifer B. Salvatore, Esq.
Salvatore Prescott & Porter, PLLC
105 East Main Street
Northville, Michigan 48167
Phone: (248) 679-8711
Fax: (248) 773-7280
salvatore@spplawyers.com

/s/ Scott J. Ferrell
Scott J. Ferrell, Esq.
Pacific Trial Attorneys, P.C.
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com


Attorneys for Plaintiff

22